GRAVES v. SPOON.

1. A decree different in its result from what the Circuit judge intended it to
be, reversed.   *Cothran, A. A. J., dissenting.*
2. The claims of creditors of an estate are superior to the claims of distribu-
tees, and payments to the latter to the prejudice of the former are justifiable
only where the administrator, after a close observance of his prescribed
duty, makes such payments in ignorance of outstanding demands, and with
assets then of sufficient value to pay all debts.   Rules for proper adminis-
tration stated.

---

Before ALDRICH, J., Laurens, September, 1881.

At the hearing of this appeal, the seats of the Chief Justice and
Mr. Justice McGowan, who had been of counsel in the court

below, were occupied by two of the Circuit judges, Hons. J. H. Hudson and J. S. Cothran.

This action was commenced in 1866 or 1867, in the Court of Equity for Laurens, for an account by the principal defendants of their administration of the estate of their intestate, Joseph F. Graves, who died intestate in 1859. The original pleadings having been lost and no copies preserved, substituted pleadings were served and filed in October, 1880.

The appeal was from the following decree:

This is an old case, commenced in the Court of Equity. The papers were lost, and the action was renewed by complaint and answer. The case was referred to the master, Mr. Barksdale, who made an elaborate report, which was heard on exceptions by his Honor Judge Hudson. The report was very carefully reviewed by the presiding judge, who laid down explicit rules by which the master was to be governed in making up his amended report. This decision was not appealed from, and it is therefore the law of the case. The report of the master, as amended by the directions of Judge Hudson, is now before me on exceptions.

I have considered the opinion of Judge Hudson, and, in my view, the master has carefully followed his instructions. It is supposed by the plaintiff's exceptions that the master has erred in allowing the charge made by the administrator for board, clothing and tuition. I do not think the decree intends to exclude these charges. The children were minors, with a good estate, and were certainly entitled to a support and such educational advantages as became their station in life. When the judge speaks of a separate account with each of the distributees, he does not mean they are not to be supported while the estate is under course of administration. The family is entitled to a support, whether the estate is solvent or insolvent. If it be solvent, the amount paid out for each distributee will be charged to his distributive share in the final settlement; but should it prove insolvent, as did this estate, then the maintenance of the family and the education of the children became a charge on the estate while the same was in due course of administration. Any

other rule would throw the family on the cold charity of the world immediately upon the death of the intestate.

I do not mean to say the administrator can keep the estate in hand to support the family, but while he is calling in the debts and collecting the assets, any moneys expended for the support of the family are a legitimate charge on the estate. I do not think it was the intention of Judge Hudson to mulct the administrator when he directed the master that the proper rule was to open a separate account with each distributee and charge upon his share the amounts advanced for his benefit. In this case there can be no such account, for the estate is insolvent, and there is nothing to distribute. Hence, the master was compelled to charge these amounts in the general account, and make the administrator bear them. This was not the intention of the judge who heard the cause.

Nor do I think the administrator intended the maintenance and education of the children as a gratuity. He was under no obligation to confer this benefit, and at the death of the intestate it was supposed the estate was ample to pay the debts and leave a surplus for distribution. This estate shared in the losses common to all as one of the consequences of the war. Creditors and distributees must alike submit to the disappointment of these expectations.

It is ordered, adjudged and decreed, that all the exceptions be overruled, the report of the master confirmed and made the judgment of the court. It is further ordered, that the administrator do pay over to the master the amount proved to be due in his report, and interest thereon from the date when the balance was struck. It is further ordered, that the administrator turn over to the master the assets in his hands, as set forth and described in the schedule annexed to the report, and that the costs be paid out of the estate.

Defendants appealed upon the following exceptions:

1. That his Honor erred in confirming the report of the master filed on August 31st, 1881.

2. That his Honor erred in not decreeing that the $4,785.68 found by the master as due from the administrators should be credited with the amount paid out by the administrators for

the board, clothing and tuition for the heirs-at-law, who were minors, in the course of administering the estate of their intestate.

*Messrs. Ball & Watts, Ferguson & Young,* for appellants.

*Messrs. James Farrow, W. L. Wait,* contra.

April 27th, 1883. The opinion of the court was delivered by Mr. Justice Hudson. This is an action by Jacob S. Graves, one of the heirs-at-law of Joseph F. Graves, against John H. Spoon, as administrator of Joseph F. Graves' estate; Ann M. Boyd, as administratrix of the estate of W. W. Graves, deceased, who was joint administrator with John H. Spoon, and the representatives of the sureties on their administration bond, and the other heirs-at-law of Joseph F. Graves. The object of the action is to compel the said administrators and their sureties to account, and to effect a settlement and distribution of the said estate. The appeal is brought up by the said surviving administrator, John H. Spoon, and the legal representatives of the deceased co-administrator and sureties.

After great delay the cause was heard on Circuit at the February term, 1881, of the Circuit Court for Laurens, and on the 28th day of that month a decree was filed, wherein is set forth certain principles upon which the master was directed to state the accounts of the said administrators. In accordance with what he conceived to be the rules therein laid down, the master, after references held, and much testimony taken, stated the accounts and filed his report, in which he finds the sum of $4,785.68¼ in the hands of the administrators, and due and owing by them September 21st, 1881. This balance he reports insufficient to pay the outstanding debts of the deceased, Joseph F. Graves. In ascertaining this balance he allowed the administrators no credit for payments made to the heirs by way of partial distribution of the estate, nor for moneys expended by them in maintaining the family of the deceased. He did, however, open separate accounts with the distributees, in which he did allow to the administrators credit for all sums which it was

proved they paid to or expended for them in their support and maintenance. But the estate being insolvent, and there being nothing for distribution, the result of this mode of stating the accounts is, that the administrators have really received no credit for these disbursements.

Upon exceptions to this report, the cause was again heard on the Circuit, and the presiding judge, evidently misapprehending the manner in which the master had stated the accounts, and being led, by inadvertence or otherwise, to believe that full credit for these outlays for the family, had been given to the administrators by the master in his report, and holding in his decree that such credits ought to be allowed under the circumstances of the case, confirmed the master's report. In so doing he reached a result just the opposite to what he intended. From this decree of October 12th, 1881, the appeal is brought up in behalf of the administrators, who seek to correct this unintentional error of the Circuit judge, and to have this court to award to the defendants' administrators the credits which the master refused and which the Circuit judge intended to allow, but inadvertently denied to them by confirming the master's report. On the contrary, the plaintiff, and those defendants who are identified with him in interest, seek to uphold the accounts as stated by the master and confirmed by the Circuit judge, contending that the decree is correct in its result, notwithstanding he may have intended a different conclusion.

It is very clear that the decree of the Circuit judge is different in its result from what he intended it should be, and for this reason must be reversed unless there is found enough in the brief to satisfy this court that the master has correctly stated the accounts, and that the decree confirming the same should stand. A careful examination of the brief in connection with the argument of counsel, satisfies us that the real issue in the case was not pressed either before the master or the Circuit judge in such a way as to secure a direct judgment on the point.

Before the master, the chief inquiry seems to have been as to the amounts to be allowed as credits, rather than the mode and manner of stating the accounts so as to secure the allowance of those amounts as credits to the administrators. The estate being

clearly insolvent, and there being no fund for distribution, the only mode in which credits can be made available to the administrators, is by allowing them in the general account. To open separate accounts with the distributees for the purpose of allowing the credits there, is of no benefit to the administrators; and this is the mode adopted by the master. The master supposed he was following strictly the directions laid down in the decree of February 28th, 1881. But that decree did not contemplate the insolvency of the estate, and prescribed rather the method of adjusting the accounts of a solvent estate where a fund is left for distribution after the payment of debts.

The questions which should have been raised and carefully investigated before the master and the Circuit court are, first, whether the administrators of this insolvent estate are entitled to have credit allowed them at all for any partial distribution of the estate in their hands to the heirs-at-law of Joseph F. Graves, and for any sums expended by them in the support and maintenance of the family of the deceased; and second, if so, to what amount. The last of these inquiries has been made and passed upon, but the first, which is of great delicacy and importance, seems not to have been raised directly, and has not been passed upon except in the reasoning of the Circuit judge, which is at variance with his conclusion.

The doctrine of the decree of October 12th, 1881, is at variance with the authorities, and in its broad, liberal and unqualified terms, cannot be sanctioned by this court. The rights of the creditors of a deceased are superior to the claims of heirs and distributees. The administrator of an insolvent estate, with full knowledge of the insolvency, will never be upheld in bestowing the assets upon distributees, and leaving debts unpaid; nor will he be justified in distributing the assets, nor in expending them in educating and maintaining the family, whilst ignorant of the existence of debts, provided, he ought to have known of such. His first duty is to the creditor. He is bound to take notice of the existence of debts, and is required to exhaust all efforts to discover the creditor, and to comply fully with the requirements of the law regulating and prescribing his duty in this respect.

By all proper diligence the executor or administrator must acquaint himself with the real condition of the estate before he begins to administer the assets. His duty is to gather in the assets, and to ascertain the number of creditors and the amount and the rank of their claims, before he undertakes to pay them. The payment of debts out of their legal order, the payment of legacies before creditors, the payment of family expenses for education and maintenance, partial or full distribution to the heirs in the face of outstanding debts, are all acts of *devastavit*, if thereby creditors are prejudiced. In respect to creditors, the administrator is held to the rule of strict accountability, and the exercise of the greatest diligence and the best of faith.

A diversion of assets to any of these purposes will be sustained by the courts, only when the administrator shows that in so doing he acted in good faith, and with a due regard to the rights of creditors. This he may show by establishing the fact that he had fully complied with the requirements of the law and the rules of diligence, and good faith in his efforts to ascertain the existence of debts, and made the payments after such effort and in ignorance of the existence of the creditors thereby prejudiced, or he may relieve himself of personal liability, by showing that when these payments were made he was in receipt of assets amply sufficient to pay all creditors, which assets have, however, by some unforeseen and unavoidable calamity, been diminished in value or rendered worthless. His justification must be established by clear proof of the best of faith, such proof as will entirely negative the charge of mal-administration or *devastavit*.

The rule prescribed by the courts of England on this subject is to be found in 2 *Wms. Ex.*, §§ 1158 *et seq.* and 1531 *et seq.* The stringency of this English rule is somewhat relaxed by the courts of the States of our country, but in no State to such an extent as to relieve an administrator from the observance of a strict line of duty and a strict regard for the superior claims of creditors. *Uberrima fides* must attend all his acts of administration in addition to a full compliance with the letter and spirit of the written law. This rule of the American courts is to be found in 1 *Story's Eq. Jur.*, § 90.

Now, in order to afford the appellants an opportunity to jus-

.tify their expenditures in educating and maintaining the family of the deceased, and in making partial distribution to them or any of them, of the assets of the estate in compliance with the rule of good faith, diligence and observance of law which we have indicated, the case must go back to the Circuit Court for further inquiry. If the appellants establish before the master their right to the credit claimed, or to any credits, the same must be entered in the general account. Being unable to foresee or anticipate the circumstances under which the administrators made the payments for which they claim credit, but which are alleged by the plaintiff to amount to a *devastavit,* we have avoided the citation of decided cases, deeming it proper and best only to lay down in general terms the rule of accountability enforced against executors and administrators, and to leave to the court below to apply the authority of appropriate decisions to the facts as they may be developed.

It is the judgment of this court that the judgment of the Circuit Court be reversed; that the accounts as stated by the master be re-opened, and that the case be remanded to the Circuit Court for inquiry into the right of the appellants to the credits claimed by them in the statement of their accounts, and for inquiry into such other matters and things in connection with said accounts as are not concluded heretofore in the course of this litigation.

MR. JUSTICE COTHRAN, *dissenting.* Being unable to concur in the opinion of the majority of the court, in this case, I propose to state briefly the grounds of my dissent. Fortunately for the administration of justice the reversal of the Circuit judge's decision by a bare majority of the appellate tribunal, is not attended, in this case, with any unsatisfactory consequences, for the reason that there is no difference between my brethren and myself as to the true rule of stating the accounts of an administrator, the main question involved here. It is only as to the application of the rule to the case under consideration, that a difference of opinion exists.

Owing to the inevitable fate of all the living, the principles of accounting have long since become fixed, and the true statement of such in this case is as they are laid down in " the horn books "

of the law. The well-established principle of *stare decisis,* which so commends the system of English jurisprudence to the admiration of mankind, has caused the English judges to adhere to a Procustean rule upon this subject, from which they have been unwilling to depart, and which is reiterated by Mr. Williams in his great work on Executors, Vol. II., § 1158 *et seq.*

Our own courts, availing themselves doubtless of the opportunity and of the right afforded by the establishment of the independence of the colonies, have wisely relaxed the strictness of the inflexible English rule. Mr. Story, at section 90 of his work on Equity Jurisprudence, after referring to the harsh rule of the English courts, says: "If this be a true description of the actual state of the law upon this subject, it would become an intolerable grievance if courts of equity should not be able under any circumstances to interfere in favor of executors and administrators, in order to prevent gross injustice. * * * But to found a good title to such relief, it seems indispensable that there should have been no negligence or misconduct on the part of such executors or administrators in the payment of the assets; for if there has been any negligence or misconduct, that, perhaps, may induce a court of equity to withhold its assistance."

Tried by the English rule, where neither upon the score of inevitable accident, destruction by fire, loss by robbery, or the like, nor of reasonable confidence disappointed, nor of loss by any of the other means which afford an excuse to ordinary agents, and besides, in cases of loss without any negligence on their part, these fiduciaries would be found without remedy. But conceding to them all the advantages of the more liberal doctrine of our courts, does the case, as made, entitle them to relief? This is the true question.

The office of administrator is purely voluntary upon the part of him who assumes it. It implies willingness to assume and ability to discharge the duties of the trust. Judge Story says there should be "no negligence or misconduct," and this, I apprehend, should be made by the fiduciary to appear affirmatively— that is to say, the burden is upon him to show that he has been both diligent and faithful. These qualities are "indispensable"

in establishing "a good title to relief," says the learned commentator. Examined in the misty and uncertain light of the principal administrator's own testimony (for he was necessarily almost the only witness), and by the confused state of the records in the ordinary's office, which ought to have been made plain by him, where is the evidence of the "indispensable" qualities of diligence and fidelity in the administration of this estate? and is not the absence of these the most conclusive evidence of "negligence and misconduct"?

The intestate died nearly twenty-five years ago. Administration of his estate was promptly taken out, the personal property was sold, and there, so far as the primary duty of ascertaining and paying of the debts was concerned, the business of the administration seemed to end. Eight or ten years afterwards an effort was made to call them to account. The pursuit of them under great difficulties has been steadily kept up ever since, and through every court that had (rightly) jurisdiction of the subject matter. *Pomeroy,* § 690; recognized in *Lupo* v. *True,* 16 *S. C.* 586. The administrators chose their line of defense then, and they should be held to it now.

It was a stubborn denial of everything charged against them by the plaintiff. They denied that there was even such a person as their intestate—that they had received and converted his estate—in short, that they owed the plaintiff anything. Through many doublings they have been finally unearthed and now ask to be allowed to adopt another and totally inconsistent line of defense, and thus the game is to be turned loose for the questionable pleasure of another chase. For twenty-five years they had possession of this estate; for more than fifteen years, by means of a false and deceitful answer, have they avoided accountability to those who are entitled to it, nor have they asked anywhere in the pleadings the privilege of resorting to another line of defense. They stated their defense upon a denial of all liability, and it has served them well, but to that should they be held.

It may be said, however, that this general denial is but the observation of counsel. To this it may well be replied, that parties to a cause speak only through their counsel, and that it was upon this observation, now found to be untrue, that the

issue was made up which has been so long upon trial.   Ordinary truthfulness, to say nothing of *uberrima fides*, such as induces a court of justice to overlook the shortcomings of fiduciaries should have caused these defendants to come into court when requested so to do in 1866 or 1867, and to have said in substance at least: "We knew the intestate Joseph F. Graves; he had an estate; we sold it and are indebted.  We attempted to administer it according to law; his orphan children were hungry and we fed them; they were naked and we clothed them.  The assets of the estate were more than sufficient to pay all the debts as was ascertained by us in the manner prescribed by law, but a great revolution has swept over the country, destroying values and wrecking this in common with other estates, and we pray you have us excused."

If they had done this, which I understand to be the requirement of the law as liberalized, I would most cheerfully concur in the main opinion in this case; but in the absence of this, and in the face of the negligence and misconduct of these fiduciaries, I am at a loss to perceive how any distinction can hereafter be made between trustees who act in good faith and those in whose conduct this "indispensable" quality is so conspicuously absent.